UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
UNITED STATES OF AMERICA,          )
                                   )
                                   )
vs.                                )   CRIMINAL ACTION
                                   )   NO. 04-1765-CBS
ANDREW MESSINA, ET AL,             )   (See also, District of Vermont
        Defendants,                )   Criminal No. 1:04 CR 80-01)
_____)


DECISION ON THE ISSUE OF IDENTITY AND
ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION
June 22, 2004

**SWARTWOOD, M.J.**

I. Nature of the Proceedings

This is a Rule 40 or commitment to another District proceeding in which Andrew Messina ("Mr. Messina") was arrested in this District in connection with an Indictment that was returned on June 4, 2004, in the United States District Court, District of Vermont, charging Mr. Messina with conspiracy to possess with intent to distribute, marijuana, in violation of 21 U.S.C. §846.

Mr. Messina appeared before this Court for his initial appearance on June 15, 2004, and at that time, he was advised of his right to waive removal and voluntarily return to the District of Vermont, his right to an identity hearing, and his rights under Fed. R. Crim. P. 20. At Mr. Messina's initial appearance, the Government requested that Mr. Messina be detained and returned to the District of Vermont in custody on the grounds of 18 U.S.C. §§ 3142(f)(1)(C)(Defendant is charged with an offense for which a

maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act") and (f)(2)(A)(risk of flight).

On June 17 and 18, 2004, an identity/detention hearing was held and at that hearing, Gary W. Stephan, Special Agent with the Immigration Customs Enforcement Agency ("ICE"), testified on behalf of the Government and was cross-examined by Mr. Messina's counsel. Additionally, Mr. Messina's parents testified on behalf of their son, offering their residence as security for a bond for their son's release and Mr. Robert Messina testified as to his qualifications and willingness to act as a third-party custodian for his son.

II. Findings of Fact

1. On October 23, 2001, the United States Border Patrol stopped a vehicle on the back roads of Swanton, Vermont. An inspection inside the trunk of the stopped vehicle disclosed two military style backpacks containing a total of approximately fifty-five pounds of marijuana. One of the persons arrested, as a result of this discovery, was Jason Pickin, who agreed to cooperate with law enforcement officials involved in his arrest. Mr. Pickin stated that he bought high-grade marijuana in Canada for $1,800 a pound and sold it for $2,000 a pound to three individuals whom he knew by the names of "D", "Andy" and "Rob". Mr. Pickin told law enforcement officials that he had smuggled marijuana into the United States from Canada on five prior occasions involving approximately 70 to 100 pounds each trip. Law enforcement officials then decided to make a controlled delivery of the 55 pounds of marijuana seized from Mr. Pickin to "D", "Andy" and "Rob"

at the Tage Inn Hotel on Route 93, in Andover, Massachusetts. The next day, on October 24, 2001, Mr. Pickin and an undercover DEA agent arrived at the Tage Inn parking lot where they encountered Andy and Rob, who attempted to get Mr. Pickin and the DEA undercover agent to further deliver the marijuana to a location in Boston. Mr. Pickin and the DEA undercover agent refused and Andy and Rob then left the Tage Inn parking lot. Govt. Ex. 1.

3. Mr. Pickin then subsequently identified Andy from the photo array as being Mr. Messina. Govt. Ex. 3.

4. The undercover DEA agent subsequently identified Andy from a booking arrest photo as being Mr. Messina.

### III. Identity

I find that the person named in the Indictment returned in the District of Vermont is the person shown in the photo array as Govt. Ex. 3 and is the same person who appeared before me in connection with this proceeding. Additionally, an undercover DEA agent identified "Andy" from a booking arrest photo as being Andrew Messina. Therefore, I find that Mr. Messina is the person named in the Indictment now pending in the District of Vermont.

### IV. Detention

The Government has moved that Mr. Messina be detained in accordance with 18 U.S,C. §§3142(f)(1)(C)(Defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act") and (f)(2)(A)(risk of flight). In a commitment to another District proceeding, release or detention of a defendant arrested in a

District other than where the offense was allegedly committed, may be detained or released "as provided by statute for these rules." Fed. R. Crim. P. 5(d)(3). Therefore, 18 U.S.C. § 3142 ("The Bail Reform Act") or ("The Act") sets forth the procedure for detaining a defendant pending trial.

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in <u>United States v. Salerno</u>, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." <u>Id.</u> at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of

4

the evidence, that the Defendant poses a risk of flight.  See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986).  See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).  Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person".  18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted.  See 18 U.S.C. § 3142 (f)(1).  The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice.  18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant  and the safety of the community against any danger posed by the Defendant's pretrial release.  See  United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the

5

appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

1. the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

2. the weight of the evidence against the person;

3. the history and characteristics of the person, including:

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

V.   Discussion of Whether Detention Is Warranted

(1) Mr. Messina's History and Characteristics

Mr. Messina was born on January 14, 1978, in Lawrence, Massachusetts.  Mr. Messina's family moved to Methuen, where he graduated from high school in 1996.  Thereafter, Mr. Messina graduated from Northeastern University in July 2001 with a bachelors degree in finance.

Mr. Messina resided with his parents while attending school and resided in campus housing and/or an apartment near Northeastern while attending that university.  For the past year and six months, Mr. Messina has resided with his parents who now live at 12 Ann Avenue, Salem, New Hampshire.

Mr. Messina has traveled to Mexico and on March 8, 2003, to Canada.  Govt. Ex. 7.

Mr. Messina has stated to Pretrial Services that he is affiliated with the Addison Wellesley Realtors of South Boston for the past six months, but has not sold any property for that firm. Govt. Ex. 10.  In 2002 and 2003, Mr. Messina worked for Vartan H. Setian.  Mr. Messina was paid a total of $35,266.90 in wages in 2002, and paid a total of $17,400 in wages in 2003.  Govt. Ex. 12. On April 29, 2002, Mr. Messina insured and registered a 2000 Mercedes automobile which he had purchased for $35,000.  Govt. Ex. 6C.  According to his financial affidavit, Mr. Messina owes approximately $25,000 on a 2001 BMW.  Financial Affidavit (Docket No. 4).  In March 2001, Mr. Messina leased a 2001 Lincoln Sedan for thirty days for approximately $2,800; in May 2001, Mr. Messina

leased a 2001 Lincoln Sedan for approximately $1,600; in July 2001, Mr. Messina leased a Lincoln Town Car for approximately sixteen days for a total of $1,600; and in December 2001, Mr. Messina leased a Lincoln Town Car for thirty-two days for approximately $2,800.  Gov't. Ex. 6B.  On June 3, 2004, Mr. Messina charged on his credit card a clothing purchase at Armani for approximately $892. Gov't Ex. 11.

The following is a summary of Mr. Messina's relevant criminal record:

| Date of Offense | Nature of the Offense | Disposition |
| --- | --- | --- |
| 12/10/97 | Malicious destruction of property | 6/9/98, pled guilty, two years suspended sentence to 6/9/00 |
| 12/10/97 | Assault and battery with a dangerous weapon | 6/9/98, pled guilty, two years suspended sentence to 6/9/00 |
| 9/15/00 | Possession of a Class B controlled substance | 12/29/00, one year suspended sentence |
| 9/15/00 | Carrying a dangerous weapon | 12/29/00, one year suspended sentence |
| 9/15/00 | Assault and battery | 12/29/00, one year suspended sentence |

(2)  <u>Nature of the Offense and Weight of the Evidence</u>

The Indictment serves as probable cause for allegations underlying the offense charged in the Indictment.  Evidence produced during the identity/detention hearing confirms that a corroborating witness identified Mr. Messina and another as the individuals for whom he smuggled a substantial amount of marijuana from Canada to the United States.  Additionally, an undercover DEA agent has identified Mr. Messina as one of the persons to whom the corroborating witness attempted to deliver fifty-five pounds of marijuana.  Therefore, the weight of the evidence against Mr. Messina is substantial.

3.  <u>Whether Mr. Messina Poses A Danger to the Community</u>

On June 9, 1998, Mr. Messina pled guilty to malicious destruction of property and assault and battery for which he received a two year suspended sentence.  On December 29, 2000, Mr. Messina pled guilty and received a one year suspended sentence to December 26, 2002 for possession of a Class B controlled substance, for carrying a dangerous weapon and assault and battery.  I find that the Government has presented overwhelming evidence that in October 2001, while serving a suspended sentence for drug and other offenses, Mr. Messina was involved in the smuggling of a substantial amount of high grade marijuana from Canada into the United States as charged in this Indictment.  Therefore, considering Mr. Messina's past record of convictions for crimes of

violence and possession of a controlled substance, his committing offenses while serving a suspended sentence, and the nature of the offense charged in this Indictment, I find by clear and convincing evidence that Mr. Messina poses a danger to the community and that there are no conditions or combination of conditions that I can impose to protect the safety of any person or persons in the community.

      (4) <u>Whether Mr. Messina Poses A Risk of Flight</u>

Mr. Messina's parents have offered to post their residence as security for Mr. Messina's appearance in the District of Vermont in connection with this Indictment.  Additionally, Mr. Messina's father has agreed to act as a third-party custodian for his son. However, Mr. Messina, who has not been incarcerated\

 despite multiple prior convictions, faces a substantial period of incarceration if convicted of the offense charged in this Indictment. Mr. Messina has contacts in Canada as evidenced by his trip to Vancouver in 2003 and his involvement in 2001 with Mr. Pickin in smuggling marijuana from Canada.  Furthermore, Mr. Messina's ability to own and lease expensive automobiles and to purchase/charge expensive clothing suggests that he has access to substantial amounts of money.  Therefore, considering the potential penalty Mr. Messina faces if found guilty of the offense charged in this Indictment, his contacts in Canada and his access to money, I find by a preponderance of the evidence that Mr. Messina poses a risk of flight and that there are no conditions or combination of

11

conditions that I could impose that will assure his appearance in that Court as directed.

### VI   Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.   That Mr. Messina be committed to the custody of the Attorney General, or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.   That Mr. Messina be afforded a reasonable opportunity for private consultation with counsel; and

3.   On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Messina is detained and confined shall deliver Mr. Messina to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

<u>/S/CHARLES B. SWARTWOOD, III</u>
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE